615 A.2d 109

**Timothy READ and Nancie Read, H/W**

v.

**Shunkai SHU and Mandarin Tang, III and Cynthia R. Cohen and English Sports Cars Limited.**

**Appeal of Shunkai SHU and Mandarin Tang, III.**

Superior Court of Pennsylvania.

Argued May 12, 1992.

Filed Oct. 22, 1992.

228

John J. Gonzales, Feasterville, for appellants.

Marc S. Rosenberg, Philadelphia, for appellees.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

WIEAND, Judge:

In this action to recover for personal injuries and damages resulting from an automobile accident, we have been asked to review an order of the trial court which granted a new trial because of the inadequacy of the jury's verdict. Because in such cases our review is limited, we affirm the order of the trial court.

On February 11, 1988, Timothy Read was operating his 1985 Chevrolet Celebrity, in which his father, George Read, was a

passenger. While the Read vehicle was stopped for a traffic light, a vehicle operated by Cynthia Cohen and owned by English Sports Cars Limited also came to a stop for the light. However, a 1979 Chevrolet Cavalier owned by Mandarin Tang, III and operated by an employee, Shunkai Shu, failed to stop and collided with the rear of the Cohen vehicle, forcing it into the rear of the Read vehicle with such force as to break the driver's seat in the Read vehicle. After the accident and the necessary exchange of information, the Reads, who were painters, went to a job site to make an inspection and prepare an estimate. Two hours later, Timothy Read contacted a physician to complain of pain in his neck and back. He and his wife filed an action for his personal injuries and the property damage caused in the accident. Named as defendants were the owners and operators of the vehicles which struck the rear of his car. Cohen and English Sports Cars Limited were removed from the case prior to trial, and Shu and Tang admitted liability. Read testified at trial that he suffered constant discomfort of his neck and back after the accident. The jury awarded damages to the plaintiffs in the amount of $1,520. Three days later, the trial court sua sponte granted a new trial on grounds that the verdict was inadequate. The defendants appealed.

In *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985), the Pennsylvania Supreme Court summarized the rules governing the grant of a new trial.

This Court has repeatedly emphasized that it is not only a trial court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. *Burchard v. Seber,* 417 Pa. 431, 438, 207 A.2d 896, 899 (1965); *Frisina v. Stanley,* 409 Pa. 5, 7, 185 A.2d 580, 581 (1962); *Kiser v. Schlosser,* 389 Pa. 131, 133, 132 A.2d 344, 345 (1957). Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is so contrary to the evidence as to

shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Burrell v. Philadelphia Electric Company,* 438 Pa. 286, 265 A.2d 516 (1970).

*Id.,* 507 Pa. at 598, 493 A.2d at 672.

The *Thompson* Court also stated the standard of appellate review in cases where a new trial has been granted on grounds that the verdict was against the weight of the evidence.

An appellate court by its nature stands on a different plane than a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a cold record. Because of this disparity in vantage points an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge. Rather our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict. *Austin v. Ridge,* 435 Pa. 1, 255 A.2d 123 (1969); *Anzelone v. Jesperson,* 436 Pa. 28, 258 A.2d 510 (1969); *Kiser, supra.* In that regard the Superior Court must review a trial court's decision to grant a new trial in the same manner as we have required review of the denial of a new trial. *See Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984).

In reviewing the entire record to determine the propriety of a new trial, an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail. It is not the place of an appellate court to invade the trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function.

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must

"examine the record and assess the weight of the evidence; not, however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury." *Exner v. Gangewere*, 397 Pa. 58, 60, 152 A.2d 458, 460 (1959). Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

*Id.*, 507 Pa. at 599–600, 493 A.2d at 672–673.

In the present case, plaintiff's neurosurgeon, Dr. Cohen, testified without contradiction regarding plaintiff's neck and back injuries. He said:

> Examination of his neck revealed significant right-sided tenderness accompanied by spasm, that is there was palpable cramping, muscle spasm in the muscles of the right side of his neck, and over the right trapezius muscle which is the major muscle over the right shoulder.

Plaintiff also suffered diminished sensation in two of the fingers of his right hand, which extended well beyond the wrist. A similar loss of sensation was present in his lateral thigh on the right side. These symptoms were diagnosed as a nerve root dysfunction. A subsequent MRI scan confirmed that several discs were out of place and were causing pressure on a nerve root. These findings, the evidence showed, were consistent with the plaintiff's ongoing neck pain, the muscle spasms in his neck, and the tingling or numbness occurring in his right arm and fingers. These conditions, Dr. Cohen testified, had been caused by the accident. Finally, Dr. Cohen gave a poor prognosis for plaintiff's injuries. He said that Read's condition would become worse in the future.

The jury's verdict of $1,520 included property damage of $520. The amount awarded for plaintiff's injuries, therefore, was only $1,000. Under these circumstances, we cannot say that the trial court's award of a new trial was an abuse of discretion. The undisputed medical testimony was that the pain, numbness and muscle spasms from which the plaintiff suffers will continue indefinitely. It is true, as appellants

point out, that plaintiff, although allegedly unable to continue working as a painter, has not sustained a substantial loss of earning capacity because he now works as a forklift operator. Still, in view of the uncontradicted medical testimony, we cannot say that the trial court abused its discretion when it found the verdict inadequate and contrary to the weight of the evidence.

Order affirmed.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

I concur in the result reached by the majority; however, I write separately to elaborate on the proper focus of both the appellate court and the trial court when reviewing a jury's verdict. Since a review of the record supports the majority's holding that the trial judge did not abuse his discretion, I concur in the judgment.

I am puzzled by the statement in the beginning of the majority's Opinion, "[b]ecause our review is limited, we affirm ..." In my view, an appellate court does not affirm a trial court's grant of a new trial because its review is limited, it affirms because there are facts that exist on the record that support the trial court's findings.

This distinction is important. We, as an appellate court, must be careful not to invade the trial judge's discretion, but we must also ensure that the trial judge does not invade the fact finding province of the jury. *Thompson v. City of Philadelphia*, 507 Pa. 592, 599–601, 493 A.2d 669, 673 (1985). This is the purpose of our review, and we limit ourselves to that inquiry. The appellate court may not give absolute deference to the trial judge, as the majority's statement intimates, but must search the record for identifiable facts that indicate that the trial judge has not palpably abused his discretion.

The trial judge may not grant a new trial, unless the verdict was so against the weight of the evidence that injustice "stands forth like a beacon," or more commonly, where the verdict "shocks the conscience of the court." *Bortner v. Gladfelter*, 302 Pa.Super. 492, 448 A.2d 1386 (1982). This

standard is rigorous because the trial judge is not a factfinder. Rather, he is the impartial overseer of the trial. Situations where the trial judge may assert his limited discretion are those where the verdict appears to have resulted from

> passion, prejudice, partiality or corruption, or that the jury disregarded the instructions of the court, or, in some instances where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff ...

*Guidry v. Johns–Manville Corp.*, 377 Pa.Super. 308, 547 A.2d 382 (1988) (*quoting Morris v. Peckyno*, 202 Pa.Super. 490, 198 A.2d 396 (1964)).

This case falls into the factors above since the uncontradicted medical testimony presented to the jury demonstrated that defendant's misfeasance caused plaintiff's injury. Accordingly, the trial judge could reasonably have found that the verdict had no reasonable relation to plaintiff's loss. The majority correctly noted this fact in holding that the trial judge did not abuse his discretion.

When the trial court grants a new trial, the court must support its decision to grant a new trial with "words of appropriate urgency and decisiveness." *Elza v. Chovan*, 396 Pa. 112, 117, 152 A.2d 238, 241 (1959). Such expression by the trial court in its opinion helps the appellate court better discern if an actual miscarriage of justice occurred. I must note that in this case, however, the trial judge wrote in his opinion that he was "impressed" by the medical doctor's "persuasive" testimony. Such credibility determinations, standing alone, are a shaky ground on which to award a new trial.

Normally, a low verdict alone will not suffice to grant a new trial. *Guidry*, 377 Pa.Super. at 313–15, 547 A.2d at 385. Our Supreme Court has held that where a verdict could have been the result of jury compromise, a new trial may not be awarded on the ground that a damage award was too low. *Boggavara-pu v. Ponist*, 518 Pa. 162, 542 A.2d 516 (1988). Thus, if there

had been conflicting testimony regarding the amount of plaintiff's damages in this case, the painfully low verdict would withstand a motion for a new trial, regardless of how persuasive the judge viewed plaintiff's witnesses.

The heart of my concern was expressed in my recent concurrence in *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111 (1991). There, I was of the view that an appellate court is not properly situated to review challenges to the weight of the evidence in a criminal trial. Respect and deference for the factfinder are equally applicable to a trial judge sitting in a civil trial where the jury is put to the task of placing a price tag on otherwise intangible damages. The trial judge in this case instructed the jury that there "is no mathematical formula for me to impart to you [regarding pain and suffering damages] during these instructions." (R.R. p. 53.) Since there is no such formula, trial judges and appellate judges alike must take extreme caution when disturbing a jury's verdict. Our review is designed to ensure that trial judges are as protective of the jury's province as we are of their's.

A permissive interpretation of the majority's statement is that trial judges' decisions are subject to perfunctory review. I am concerned that such an interpretation might open a Pandora's box for trial judges to grant new trials when they do not agree with the verdict. That course of action is abhorrent to the jury's function, and is contrary to our law. A judge may not substitute his judgment for the jury's, but only grant a new trial when the verdict shocks one's sense of justice. Unless the "shock the conscience" standard is subject to thorough, albeit limited, review, our own efforts defeat our entire purpose of ensuring that proper deference is accorded to those who rightfully, and legally, deserve it.

Since I find that the trial judge did not abuse his discretion in granting a new trial, I concur in the judgment.